# IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
## AT NASHVILLE
January 19, 2012 Session

## RANDY BRAY v. STATE OF TENNESSEE

**Direct Appeal from the Circuit Court for Grundy County**
**No. 4155     Thomas W. Graham, Judge**

---

**No. M2011-00665-CCA-R3-PC - May 23, 2012**

---

The petitioner, Randy Bray, appeals from the Grundy County Circuit Court's denial of his petition for post-conviction relief. After trial, a jury convicted him of two counts of first degree premeditated murder. In this appeal, Bray argues that he received the ineffective assistance of counsel based on a failure to file motions to suppress (1) a shotgun, (2) his statement to police, and (3) a 911 call. Upon review, we affirm the judgment of the post-conviction court.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Circuit Court Affirmed**

CAMILLE R. MCMULLEN, J., delivered the opinion of the court, in which JAMES CURWOOD WITT, JR., J., joined and JERRY L. SMITH, J., not participating.

Norman D. Lipton, South Pittsburg, Tennessee for the Petitioner-Appellant, Randy Bray.

Robert E. Cooper, Jr., Attorney General and Reporter; Benjamin A. Ball, Assistant Attorney General; James Michael Taylor, District Attorney General; Steve Strain, Assistant District Attorney General, for the Appellee, State of Tennessee.

## OPINION

**Background.** Bray's convictions stem from a confrontation in which Bray killed Anthony Sells and Elvis Sells. On June 20, 2005, Bray encountered the Sells brothers separately while driving in Tracy City, eventually leading to a physical fight in a parking lot. After the fight, Anthony Sells called 911 to request police assistance. Bray, meanwhile, drove home, retrieved a shotgun, and returned to Tracy City. Bray again encountered Anthony Sells, who was driving toward the police department, and followed him. When the two arrived at the police department, Elvis Sells, his children, and Anthony Sells's wife were present. Bray shot the Sells brothers and hit Elvis Sells's head with a metal pipe. Bray then drove to a wooded area outside Tracy City, where he remained until law enforcement officers found him the next afternoon. After his arrest, Bray gave a statement to the police. See State

v. Randy Bray, No. M2007-01301-CCA-R3-CD, 2008 WL 624914, at *1-11 (Tenn. Crim. App., at Nashville, Jan. 23, 2008), perm. app. denied (Tenn. Sept. 15, 2008).

Following Bray's trial, he appealed his convictions, and this court affirmed the trial court's judgments. Id. at *1. Bray filed a pro se petition for post-conviction relief, and the post-conviction court appointed counsel. After the filing of an amended petition, the court held an evidentiary hearing on the matter.

At the hearing, counsel testified that he was retained to represent Bray in this case. Counsel, who had been practicing law for twenty-three years at the time of the hearing and had tried several first degree murder cases, was assisted at trial by his partner, who had been practicing law since 1962. Counsel interviewed, either personally or with the assistance of an investigator, all the witnesses of whom he was aware, between ten and twenty people. He reviewed all the evidence in the case and recalled that it included a recorded statement that Bray gave the police and a 911 call made by one of the victims.

Counsel testified that he discussed with Bray what happened after the homicides, including the events surrounding his arrest and statement to the police. Counsel recalled that the homicides occurred around 5:00 p.m. Bray spent the night in the woods and then was arrested the following afternoon. Counsel did not recall asking Bray what he had eaten during that time period. He considered filing a motion to suppress Bray's statement, but he decided not to do so. Counsel explained:

> [I]t goes to the theory of the defense . . . [.] [L]et me put it this way, as far as identity was concerned, I certainly didn't think there was any way that the case could be defended on those grounds. I thought that Randy Bray's strongest point was his very down to earth nature of his personality. He has a very honest demeanor, and that was his only hope.

In Bray's statement, admitted as an exhibit at the post-conviction hearing, he described the events leading up to the homicides and how the Sells brothers repeatedly agitated him throughout the afternoon. Bray said that at the time of the shooting he was in a "rage" and "lost control of what [he] was doing." He described losing his senses and said he "blacked out except for what [he] . . . was doing at that time."

Counsel acknowledged that he could have challenged the admissibility of the 911 call. He opined that even if the statement and the 911 call had been excluded, the case would not have been different. He believed that it was necessary for Bray to testify regardless of the admissibility of these items of evidence, and he would have advised Bray to testify. Counsel testified that Bray "was taking our advice, and he put his life in our hands. . . . [I]f we recommended taking the stand, that's what he did faithfully and compliant."

On cross-examination by the State, counsel testified that he received all the evidence in discovery and was not surprised by anything at trial. He believed that Bray told the officers, "I guess I'm the guy you're looking for," and showed them where the shotgun was before Bray waived his Miranda rights. Counsel recalled that Bray later waived his Miranda rights. Counsel saw a video recording of Bray's statement to police and was able to assess Bray's demeanor and affect. Counsel could not recall any legal basis on which to suppress any of Bray's statements to police. Counsel said that "the statements didn't necessarily hurt [Bray]" and that they were consistent with Bray's trial testimony.

Regarding the 911 call, counsel explained his decision not to challenge its admissibility:

> [T]here was a potential upside to that in that at that point in time, maybe naively, I still thought that we might be able to turn the Sells brothers into the aggressors, and then we've got a situation where one of them as not only being the aggressor, but he's running to the law and trying to curry favor with them and get them on his side, which has an aspect to it that could be beneficial to us.

Bray testified that when he was arrested for these offenses, he was outside Tracy City in a wooded area with a few houses nearby. He arrived in the wooded area around sunset on the date of the homicides, and he did not sleep that night. At the time of his arrest, he had not eaten since the morning before, when he ate a bowl of cereal. Bray testified that he went a whole day and night without food. By the time he was arrested, he was hungry, tired, and exhausted. Bray said that he would not have given a statement to police had he not been so hungry and tired.

Bray described what happened when he first saw law enforcement officers:

> I was walking out at that time. They had came around a curve there. I was on the side of the road, and they was like four cars – three state trooper cars, and a Blazer, I think it was, and they were all close together, and they pulled up to me, and the first state trooper, he asked me who I was, and I told him I guess I'm who you're looking for.

The trooper then got out of the car, told Bray to get on the ground, and handcuffed him. The officers asked Bray about the gun, and Bray showed them where it was. After that, according to Bray, the officers informed him of his Miranda rights.

On cross-examination, Bray testified that, in his police statement, he was able to describe his confrontations with the victims and the fact that Bray went to his house to

retrieve a shotgun. He testified that his trial testimony was consistent with what he told police that day.

A transcript of the trial proceedings was admitted as an exhibit at the hearing and included in the record on appeal.

Following the hearing, the court denied Bray's petition for post-conviction relief. This timely appeal followed.

## ANALYSIS

**Standard of Review.** Post-conviction relief is only warranted when a petitioner establishes that his or her conviction is void or voidable because of an abridgement of a constitutional right. T.C.A. § 40-30-103 (2006). The Tennessee Supreme Court has held:

> A post-conviction court's findings of fact are conclusive on appeal unless the evidence preponderates otherwise. When reviewing factual issues, the appellate court will not re-weigh or re-evaluate the evidence; moreover, factual questions involving the credibility of witnesses or the weight of their testimony are matters for the trial court to resolve. The appellate court's review of a legal issue, or of a mixed question of law or fact such as a claim of ineffective assistance of counsel, is de novo with no presumption of correctness.

Vaughn v. State, 202 S.W.3d 106, 115 (Tenn. 2006) (internal quotation and citations omitted). "The petitioner bears the burden of proving factual allegations in the petition for post-conviction relief by clear and convincing evidence." Id. (citing T.C.A. § 40-30-110(f); Wiley v. State, 183 S.W.3d 317, 325 (Tenn. 2006)). Evidence is considered clear and convincing when there is no serious or substantial doubt about the accuracy of the conclusions drawn from it. Hicks v. State, 983 S.W.2d 240, 245 (Tenn. Crim. App. 1998) (citing Hodges v. S.C. Toof & Co., 833 S.W.2d 896, 901 n.3 (Tenn. 1992)).

Vaughn further repeated well-settled principles applicable to claims of ineffective assistance of counsel:

> The right of a person accused of a crime to representation by counsel is guaranteed by both the Sixth Amendment to the United States Constitution and article I, section 9, of the Tennessee Constitution. Both the United States Supreme Court and this Court have recognized that this right to representation encompasses the right to reasonably effective assistance, that is, within the range of competence demanded of attorneys in criminal cases.

Vaughn, 202 S.W.3d at 116 (internal quotations and citations omitted).

In order to prevail on an ineffective assistance of counsel claim, the petitioner must establish that (1) his lawyer's performance was deficient and (2) the deficient performance prejudiced the defense. Id. (citing Strickland v. Washington, 466 U.S. 668, 687 (1984); Baxter v. Rose, 523 S.W.2d 930, 936 (Tenn. 1975)). "[A] failure to prove either deficiency or prejudice provides a sufficient basis to deny relief on the ineffective assistance claim. Indeed, a court need not address the components in any particular order or even address both if the [petitioner] makes an insufficient showing of one component." Goad v. State, 938 S.W.2d 363, 370 (Tenn. 1996) (citing Strickland, 466 U.S. at 697).

A petitioner successfully demonstrates deficient performance when the clear and convincing evidence proves that his attorney's conduct fell below "an objective standard of reasonableness under prevailing professional norms." Id. at 369 (citing Strickland, 466 U.S. at 688; Baxter, 523 S.W.2d at 936). Prejudice arising therefrom is demonstrated once the petitioner establishes "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." Id. at 370. "'A reasonable probability is a probability sufficient to undermine confidence in the outcome.'" Id. (quoting Strickland, 466 U.S. at 694).

We note that "[i]n evaluating an attorney's performance, a reviewing court must be highly deferential and should indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." State v. Burns, 6 S.W.3d 453, 462 (Tenn. 1999) (citing Strickland, 466 U.S. at 689). A court will defer to counsel's tactical or strategic choices as long as they are informed by adequate preparation. Hellard v. State, 629 S.W.2d 4, 9 (Tenn. 1982). Moreover, "[n]o particular set of detailed rules for counsel's conduct can satisfactorily take account of the variety of circumstances faced by defense counsel or the range of legitimate decisions regarding how best to represent a criminal defendant." Strickland, 466 U.S. at 688-89.

**I. Motion to Suppress Shotgun.** Bray argues that he received the ineffective assistance of counsel based on a failure to move for the suppression of the shotgun Bray used to kill the victims, allegedly obtained in violation of his Miranda rights. Bray contends that counsel's failure "to raise this issue was unreasonable and calls into doubt the verdict of the jury." The State responds that Bray has failed to prove counsel's ineffectiveness by clear and convincing evidence. We agree with the State.

At the post-conviction hearing, trial counsel testified that to the extent this evidence proved identity, there was no reason to suppress it because the case could not be defended on identity. The post-conviction court ruled that Bray failed to prove counsel rendered ineffective assistance in this regard. It stated:

The fact whether or not there had been a suppression of the actual physical evidence of the gun, or of the initial confession on the scene where he was more or less turning himself in, would not have changed the outcome of the trial, and I think they also, within the standard of care that an attorney would have owed, there was a reason for them to do what they did on all of these items, that can . . . come within a classification of strategic decision . . . . I don't think it would have helped enough in any of those to call . . . the verdict of the jury into doubt.

Upon our review of the record, we conclude that Bray has not produced clear and convincing evidence that trial counsel was ineffective based on a failure to move for the suppression of the shotgun. Notably, Bray has not produced evidence of any likelihood that the outcome of trial would have been different had counsel objected. In light of eyewitness trial testimony, it is not reasonably likely that the exclusion of the shotgun would have led to a different result at trial. Consequently, Bray is not entitled to relief on this issue.

**II. Motion to Suppress Police Statement.** Bray argues that counsel was ineffective for failing to seek the suppression of Bray's statement to law enforcement officers, which was allegedly obtained in violation of his Miranda rights. He asserts that if the statement were not admitted at trial, he may have decided not to testify. He argues that this brings the verdict into question because "[w]hether or not an accused takes the witness stand is something that typically has a dramatic effect on the opinions of the jurors." The State again contends that Bray failed to produce sufficient evidence of counsel's ineffective assistance. We agree with the State.

Counsel testified at the evidentiary hearing that he did not move to suppress this evidence because it was not damaging to the defense strategy. Although counsel never stated the specifics of the defense strategy at the post-conviction hearing, a review of the trial transcript makes clear that Bray's defense was to challenge the State's proof of his mental state at the time of the killings and argue that he did not act with premeditation, was provoked, or was involuntarily intoxicated. See Randy Bray, 2008 WL 624914, at *11-14 (rejecting Bray's claim on direct appeal that the State's proof of mental state was insufficient). Counsel also testified that the introduction of this evidence did not hurt Bray and was consistent with Bray's trial testimony, in which Bray described ingesting six Xanax pills, drinking three beers, getting very angry, and losing his senses.

The post-conviction court determined that Bray did not prove either deficient performance or prejudice based on counsel's failure to file a motion to suppress the police statement. The court stated:

[The statement] did contain a lot of his explanation that they were . . . going to be able to get in without him having to take the stand, even though, they ultimately decided he should take the stand. I mean, confessions cut both ways. They have some bad and sometimes they have a lot of – they get both arguments in . . . . It certainly was a strategic position to determine whether or not the good outweighs the bad, or that there could be an upside that would be helpful, because [counsel] indicated from his position that he understood both the upside and the downside. . . . In the end when you lose at trial, everything that happens, you wish you'd done something different, because the trial is lost, but from my standpoint it wouldn't have made any difference . . . ."

Upon our review, we conclude that Bray has not produced clear and convincing evidence that counsel was ineffective in failing to move for the suppression of the police statement. Rather, the evidence shows trial counsel's decision to be a strategic one informed by adequate preparation, and we decline to second-guess it. Counsel believed that the introduction of the statement, in which Bray described losing control of himself and blacking out during the killings, was consistent with the defense strategy to attack the State's proof on premeditation. Furthermore, Bray has not proven any prejudice resulting from the introduction of the statement. He merely asserts that without the statement in evidence, he may have decided not to testify at trial. Such an assertion does not rise to the level of clear and convincing proof of a reasonable probability that the outcome at trial would have been different. Consequently, Bray is not entitled to relief.

**III. <u>Motion to Suppress 911 Call.</u>** Bray argues that trial counsel's failure to suppress a 911 call placed by Anthony Sells, which was allegedly admitted at trial in violation of Bray's confrontation rights, constituted ineffective assistance. He asserts that "[i]t is hard to imagine a more damaging piece of evidence that should have been excluded." The State argues that Bray failed to prove this claim by clear and convincing evidence. We agree with the State.

The call at issue here was described at trial by Wanda McDaniel, a 911 dispatcher. She testified that Anthony Sells reported that Bray was trying to assault him. Anthony Sells said Bray "was drunk and had already jumped on his brother." McDaniel told Sells, who was calling from a pay phone across the street from the police department, to stay near the police department until an officer arrived.

At the post-conviction hearing, counsel testified that he believed that the evidence at trial would demonstrate the Sells brothers as the aggressors in the conflict. He believed that the introduction of the 911 call would make Anthony Sells appear to be seeking police help only to curry favor with them, presumably because Anthony Sells knew he and his brother were in the wrong. This evidence, according to counsel, "had a potential upside."

The post-conviction court determined that Bray failed to prove ineffective assistance regarding the 911 call. It stated, "The 911 [call], there again, you know, I don't think anything about that really made it any more or less crucial to the situation." The court reviewed the trial evidence against Bray and found that the proof "was very strong, overbearing." It found that counsel made a strategic decision and the exclusion of this evidence did not create a reasonable probability of a different outcome at trial.

Bray has failed to prove by clear and convincing evidence that counsel was ineffective for not challenging the admissibility of the 911 call. The record reflects that counsel made a strategic decision regarding the call, believing that it, when considered with other evidence at trial, could be beneficial to Bray's case by portraying the victims negatively. Again, we refuse to second-guess such strategic decisions informed by adequate preparation. Furthermore, Anthony Sells's statement that Bray appeared drunk tended to support Bray's defense of involuntary intoxication, in so far as it demonstrated intoxication. Additionally, the proof at trial without the 911 call overwhelmingly demonstrated Bray's guilt. One witness saw Bray commit the killings, and others saw him near the scene. After shooting the Sells brothers, Bray fled and hid in the woods until he was discovered by police officers. At trial, Bray admitted killing the Sells brothers. In light of such overwhelming evidence, Bray cannot demonstrate prejudice by clear and convincing proof. Cf. Proctor v. State, 868 S.W.2d 669, 673 (Tenn. Crim. App. 1992) (finding that the overwhelming evidence of guilt, based in part on the defendant's confession, precluded a showing of prejudice); Raymond E. McNeil v. State, No. M2010-00671-CCA-R3-PC, 2011 WL 704452, at *6 (Tenn. Crim. App., at Nashville, Mar. 1, 2011) (finding that overwhelming evidence of guilt precluded showing of prejudice from admission of item of evidence at trial). This issue merits no relief.

## CONCLUSION

Upon review, we affirm the judgment of the post-conviction court.

_____
CAMILLE R. McMULLEN, JUDGE